**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Case No. 10 cv 5437 |
| | § | |
| CANCER TREATMENT & RESEARCH | § | |
| FOUNDATION AND DOES 1-10, | § | |
| | § | |
| Defendant. | § | |

**CANCER TREATMENT & RESEARCH FOUNDATION'S**
**ANSWER AND COUNTER-PETITION**

NOW COMES, Cancer Treatment & Research Foundation ("CTRF" or "Defendant") and files this, its Answer and Counter-Petition against American General Life Insurance Company ("American General"), and for cause would show this honorable Court as follows:

**NATURE OF CASE**

1.     This is an action where American General seeks declaratory judgment against Cancer Treatment & Research Foundation and Does 1-10 seeking a declaration that there are no claims payable under the policy of life insurance bearing the number YM00563663 under the Federal Declaratory Judgment Statute, 28 U.S.C. § 2201

2.     Opposite of American General's position, CTRF seeks a judgment against American General for payment of life insurance benefits under the same policy.  CTRF will show this honorable court that American General has a long history of failure and refusal to pay life insurance benefits as per its insurance contracts by claiming "fraud" and "no meeting of the minds" while it happily collects premiums.  CTRF will show that

1

there is absolutely no evidence to support American General's allegations and in fact, will produce evidence to the contrary.

3.     CTRF brings its suit under Texas Law, the home state of American General and in fact, filed an action in the Harris County Texas District Court in Cause Number 2010-54401 under the Texas Deceptive Trade Practices Act.  Although service upon the President of American General Life Insurance Company has been attempted by the Harris County Constable's Office on numerous occasions pursuant to Chapter 804 of the Texas Insurance Code, American General's president will not avail herself and, in fact, the security guards at American General will not allow the deputy constable into the building to serve the citation forcing CTRF into further expense and damages.

4.     CTRF now counter sues American General in this cause of action for declaratory relief that the subject policy is valid and for the payment of the subject life insurance policy proceeds.  Further, CTRF sues for damages under Sections 17.46(b)(5), (7), (12), (14), (20) and (24) and 17.50(a)(2), (3) and (4) of the Texas Business and Commerce Code commonly referred to as the Texas Deceptive Trade Practices Act (hereinafter "DTPA").  CTRF further sues for damages under the Texas Insurance Code, Article 21.21 Sections 4(10)(a) (ii), (iv), and (viii) (codified as Section 541.060), Article 21.21 Section 11(e) (codified as Section 541,061), and Article 21.55 Section 3(f) (codified as Section 542.058) and reasonable and necessary attorneys fees as permitted under Section 17.50(d) of the Texas Business and Commerce Code, Article 21.21 Section 16(b)(1) (codified as Section 541.152) of the Texas Insurance Code and any other such damages to which Plaintiff may show itself to be justly entitled by law and in equity.

2

## ORIGINAL ANSWER

### PARTIES

5.      Plaintiff American General Life Insurance Company ("American General") is a Texas insurance company authorized to transact the business of insurance in Illinois and Missouri. American General is organized under the laws of Texas, and its principal place of business is located in Houston, Texas. American General is a citizen of Texas within the meaning and intent of 28 U.S.C. § 1332.

**CTRF admits this allegation.**

6.      Defendant Cancer Treatment & Research Foundation ("CTRF") is a corporation organized under the laws of Delaware, and its principal place of business is located in Chicago, Illinois. CTRF is a citizen of Illinois within the meaning and intent of 28 U.S.C. § 1332.

**CTRF admits this allegation.**

7.      The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1-10, inclusive, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names, and when the true names and capacities of said Defendants are ascertained, Plaintiff will seek leave from the Court to amend this Complaint accordingly. Plaintiff is informed and believes and therefore alleges that each of the Defendants designated herein as a Doe is responsible in some manner for the events herein referenced, and caused damages to Plaintiffs proximately thereby as herein alleged.

**CTRF denies the allegation that there are unknown parties and asserts that the only parties to this cause of action are CTRF and American General.**

3

## JURISDICTION AND VENUE

8.     This court has jurisdiction over all parties of this lawsuit under 28 U.S.C. § 1332(a)(1) because American General and CTRF are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of attorneys' fees, interest and costs.

**CTRF denies that this Court has jurisdiction.  The proper venue for this cause of action is in Harris County, Texas. CTRF admits that the amount in controversy exceeds $75,000.00.**

9.     American General is a corporation organized under the laws of Texas and has its principal place of business in Texas. As such, for diversity purposes, American General is a citizen of the state of Texas.

**CTRF admits this allegation.**

10.     7. CTRF is a corporation organized under the laws of Delaware and has its principal place of business in Illinois. As such, for diversity purposes, CTRF is a citizen of the state of Illinois.

**CTRF admits that it is a citizen of the State of Illinois however CTRF has subjected itself to the jurisdiction of the Harris County District Court for the purposes of this lawsuit and as such, venue should be transferred to Harris County, Texas.**

11.     As American General and CTRF are citizens of different states, a diversity of citizenship exists.

**CTRF admits that diversity exists however, a federal court proceeding based on diversity is an unnecessary delay tactic by American General in that CTRF has**

4

subjected itself to the jurisdiction of the Court in Harris County, Texas in which American General is a resident and as such, proceedings in Harris County Texas are proper.

12.     CTRF is subject to the personal jurisdiction of this Court, as CTRF is directed by Roy Almeida, who resides and/or can be served at 2421 W. Pratt Blvd., Apt. 317, Chicago, Illinois. Upon information and belief, Almeida is CTRF's sole director and is a citizen of Illinois.

**CTRF denies that it is subject to the jurisdiction of this Court due to subjecting itself to the jurisdiction of the Court in Harris County, Texas in which American General is a resident and as such, proceedings in Harris County Texas are proper.  CTRF admits that is director, Roy Almeida resides in Chicago Illinois.**

13.     This Court has jurisdiction over this declaratory judgment action pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, which grant the United States District Courts jurisdiction to declare the "rights and other legal relations of any interested party making such declaration, whether or not further relief is or could be sought."

**CTRF denies that a federal court proceeding in this matter is necessary and submits that this is suit is brought by American General as a delay tactic.  In fact, the day prior to American General filing this present action, counsel for CTRF informed counsel for American General that an action was being brought in Harris County Texas and that CTRF would be subjecting itself to the jurisdiction of the Court in Harris County, Texas, the county in which American General is a resident and as such, proceedings in Harris County Texas are proper.**

14.     Venue is proper for this action pursuant to 28 U.S.C. §1391, since CTRF is headquartered in Cook County, and CTRF's sole director is located in Cook County.

**CTRF denies that venue is proper in that CTRF has subjected itself to the jurisdiction of the Court in Harris County, Texas, the county in which American General is a resident and as such, proceedings in Harris County Texas are proper.**

### FACTUAL BACKGROUND

15.     American General is, and during all relevant times has been, in the business of underwriting and issuing policies of life insurance and is authorized to transact the business of insurance in the states of Missouri and Illinois.

**CTRF admits this allegation.**

16.     On or about May 25, 2007, an individual purporting to be Henrique Freitas ("Freitas") applied in writing (the "Application") to American General seeking the issuance of an insurance policy insuring the life of Freitas. Upon information and belief, the individual purporting to be Freitas was, in fact, an imposter passing himself off as Freitas in order to obtain the life insurance benefits described herein.

**CTRF admits that Henrique Freitas applied for life insurance benefits. Deny as to all else.**

17.     In completing the Application, the individual purporting to be Freitas provided American General with material information regarding, among other things, Freitas' name, address, employment history, net worth, income, medical history and existing and/or contemplated insurance coverage. In completing the Application, the applicant knew that he was required to provide complete, accurate and honest answers to the questions presented on the Application. The applicant also knew that American

6

General would rely upon the answers recorded on the Application in determining whether Freitas was insurable and qualified for the insurance sought through the Application.

**CTRF admits that Henrique Freitas applied for life insurance benefits. Deny as to all else.**

18. In completing the Application, the individual purporting to be Freitas responded to clear, direct questions seeking material information regarding Freitas' health and financial condition. In answering requests for information in the Application, the applicant provided specific representations regarding his current and past employment, as well as his net worth and income. For example, the applicant represented that Freitas was employed for the previous seven years as a "soccer game strategist" at "European Soccer Federation" located at "350 7th Ave., St. Louis, Missouri 63140," where his duties included "soccer game planing [sic]."

**CTRF admits that Henrique Freitas applied for life insurance benefits. Deny as to all else.**

19. Additionally, the applicant represented that Freitas' "personal earned income" and "household income" were both $360,000, and that his net worth was $2,983,000. As discussed more fully in the ensuing paragraphs, these representations were false and were each material to American General's acceptance of the risk assumed.

**CTRF admits that Henrique Freitas applied for life insurance benefits. Deny as to all else.**

20. In completing the Application, the individual purporting to be Freitas responded to clear, direct questions seeking material information regarding Freitas' existing life insurance coverage, as well as the existence of applications for other

insurance policies not yet issued. The applicant disclosed the existence of an insurance policy issued in 2007 by Transamerica Occidental Life. No other life insurance policies or applications were disclosed. As discussed more fully in the ensuing paragraphs, these representations were false.

**CTRF admits that Henrique Freitas applied for life insurance benefits. Deny as to all else.**

21.     In connection with the application process, the person purporting to be Freitas responded to clear, direct questions seeking material information regarding Freitas' medical history. In answering requests for information in the Application, the applicant provided specific representations regarding his physician, family history, personal health history and medical condition. In addition, the individual purporting to be Freitas submitted to a paramedical examination, the results of which were submitted to American General in connection with the Application. As discussed more fully in the ensuing paragraphs, these representations were false.

**CTRF admits that Henrique Freitas applied for life insurance benefits. Deny as to all else.**

22.     The person purporting to be Freitas executed the Application on May 25, 2007 in St. Louis, Missouri. By executing the Application, the applicant agreed to the affirmation contained therein (directly above the signature line) that provided:

> I, the Primary Proposed Insured and Owner signing below, agree that I have read the statements contained in this application and any attachments or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related attachments including supplement(s) and addendum(s); and (2) shall be the basis for any policy and any rider(s) issued. I understand that any misrepresentation contained

8

in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) such misrepresentation materially affects the acceptance of the risk; and (2) the policy is within its contestable period.

**CTRF admits that Henrique Freitas applied for life insurance benefits. Deny as to all else.**

23. On the basis of the statements and representations in the Application and in reliance upon, among other things, the applicant's representations that he was, indeed, Freitas and that Daniela Liotte was his fiancé, American General issued life insurance policy number YM00563663 insuring the life of Freitas (the "Policy"), with an effective date of June 27, 2007. The Policy's death benefit is $1,500,000.

**CTRF admits that American General issued a life insurance policy number YM00563663 insuring the life of Freitas (the "Policy"), with an effective date of June 27, 2007. The Policy's death benefit is $1,500,000. Deny as to all else.**

24. The person purporting to be Freitas misrepresented material information concerning Freitas' residence, employment, net worth and income on the Application. Upon information and belief, contrary to the representations contained in the Application, Freitas did not reside at the address placed in the Application, which was, instead, offices. Further, Freitas could not have been employed as was disclosed, because no such employer actually exists. American General asserts that the statements made during the application process with respect to Freitas' residence and employment were each materially incorrect and/or fraudulent. Such statements were either known or should have been known by the person purporting to be Freitas to be false.

**CTRF denies all allegations contained in this paragraph.**

25.     The person purporting to be Freitas misrepresented material information concerning Freitas' existing life insurance coverage, as well as the existence of applications for other insurance policies not yet issued. Upon information and belief, contrary to the representations contained in the Application, Freitas either held or had applied for several life insurance policies that were not disclosed in the Application, the total face value of which potentially exceeds $20,000,000. American General asserts that the statements made during the application process with respect to Freitas' existing or pending life insurance coverage were each materially incorrect and/or fraudulent. Such statements or omissions were either known or should have been known by the person purporting to be Freitas to be false.

**CTRF denies all allegations contained in this paragraph.**

26.     The person purporting to be Freitas also misrepresented and omitted material information concerning Freitas' medical history on the Application. Upon information and belief, the person purporting to be Freitas was an imposter passing himself off as Freitas during the paramedical examination in order to obtain the life insurance benefits described herein. It is contrary to public policy for any person to obtain life insurance by substituting an individual other than the named insured for medical examination, and a policy secured by such substitution is void. Further, the Policy does not constitute a valid contract between American General and Freitas because there was never a meeting of the minds concerning, inter alia, the risk assumed by American General in issuing the Policy.

**CTRF denies all allegations contained in this paragraph.**

10

27.     If Freitas does actually exist but did not apply for the policy, that is, an imposter applied as Freitas, then it cannot be shown that the person procuring coverage on Freitas held the requisite insurable interest in Freitas's life. A policy issued in either Missouri or Illinois without a valid insurable interest is void *ab initio*.

**CTRF denies all allegations contained in this paragraph.**

28.     On or about February 28, 2008, the person purporting to be Freitas submitted a "Change of Beneficiary" form to American General, indicating that the new sole beneficiary of the Policy was CTRF. American General promptly changed the beneficiary designation for the Policy accordingly.

**CTRF admits that Henrique Freitas submitted a change of beneficiary form naming CTRF as sole beneficiary. Deny as to all else.**

29.     On or about April 6, 2010, Roy Almeida, acting on behalf of CTRF, submitted a "Proof of Death Claimant's Statement" to American General. CTRF claimed that Freitas had died from hypothermia in New Jersey on January 4, 2010 in New Jersey. Further, CTRF claimed it was entitled to the Policy's $1.5 million death benefit.

**CTRF admits this allegation.**

30.     On information and belief, the individual described in CTRF's Proof of Death Claimant's Statement is not Freitas. The person described in the Claimant's Statement is, in fact, unidentified. In other words, American General has not received proof that Freitas is dead. If Freitas is not dead, the Policy's death benefit is not owed.

**CTRF denies all allegations contained in this paragraph. In fact, the wife of Henrique Freitas, Maya Silva, has identified the body of Henrique Freitas and a certificate of death was issued by Middlesex County, New Jersey.**

31. Given the foregoing, American General brings this action seeking rescission of the Policy and/or an order declaring that no claims are payable under the Policy, and that the Policy is void ab initio.

**CTRF asserts that American General is not entitled to rescission of the Policy and should be ordered to pay the life insurance benefits to CTRF as contracted for in the Policy.**

### COUNT I
### DECLARATORY JUDGMENT:
### FAILURE OF CONDITION PRECEDENT

32. Pursuant to the Federal Declaratory Judgment Statute, 28 U.S.C. § 2201, American General seeks a declaratory judgment that no claims are payable to CTRF under the Policy because Freitas is not deceased. The insured's death while the Policy is in force is a condition precedent to the payment of death benefits.

**CTRF denies the allegation that Henrique Freitas is not deceased. The body of Henrique Freitas was identified by his wife, Maya Silva and a certificate of death was issued by Middlesex County, New Jersey. American General is not entitled to a declaratory judgment under this allegation and benefits should be paid under the contractual Policy to CTRF.**

33. American General also seeks its fees pursuant to the Declaratory Judgment Statute.

**CTRF denies that American General is entitled to any fees under any statute for its breach of contract and deceptive practices.**

12

## COUNT II
## DECLARATORY JUDGMENT: LACK OF INSURABLE INTEREST

34.     Pursuant to the Federal Declaratory Judgment Statute, 28 U.S.C. § 2201, American General seeks a declaratory judgment that the Policy is null, void and rescinded ab initio due to the lack of a valid insurable interest in the life of the insured at the time of issuance.

**CTRF denies there was a "lack of insurable interest." American General's allegations are unsubstantiated and brought in bad faith with no evidence or proof whatsoever. In fact, Henrique Freitas contracted for life insurance benefits with American General. Henrique Freitas paid the premiums as contracted. Henrique Freitas supplied all necessary information to American General as requested. American General accepted the premium payments. Henrique Freitas is now deceased. The body of Henrique Freitas was identified by his wife, Maya Silva and a certificate of death was issued by Middlesex County, New Jersey. American General is not entitled to a declaratory judgment under this allegation and benefits should be paid under the contractual Policy to CTRF.**

35.     American General hereby fully and unconditionally tenders the Policy's premiums to the Court's registry. Once the funds are deposited in the Court's registry, American General seeks recovery of its attorneys' fee pursuant to the Declaratory Judgment Statute.

**CTRF denies that American General is entitled to any fees under any statute for its breach of contract and deceptive practices.**

**COUNT III**
**DECLARATORY JUDGMENT: NO MEETING OF THE MINDS**

36.     Alternatively, pursuant to the Federal Declaratory Judgment Statute, 28

U.S.C. § 2201, American General seeks a declaratory judgment that the Policy is null,

void and rescinded ab initio because an imposter posed as Freitas during the application

process, causing American General to believe it was issuing a policy of life insurance on

the life of the imposter, not Freitas.  Because no meeting of the minds existed at the time

of formation, the contract is nullified and never existed.

**CTRF denies there was an "imposter posed as Freitas" and that there was**
**"no meeting of the minds."    American General's allegations are absurd,**
**unsubstantiated and brought in bad faith with no evidence or proof whatsoever.  In**
**fact, Henrique Freitas contracted for life insurance benefits with American General**
**and accordingly, a meeting of the minds existed.  In fact, Henrique Freitas fulfilled**
**all contractual obligations under the policy.  In fact, American General accepted the**
**contractual premium payments.  In fact, Henrique Freitas is now deceased.  The**
**body of Henrique Freitas was identified by his wife, Maya Silva and a certificate of**
**death was issued by Middlesex County, New Jersey.  American General is not**
**entitled to a declaratory judgment under this allegation and should be ordered to**
**pay the benefits as contracted for to CTRF.**

37.     American General hereby fully and unconditionally tenders the Policy's

premiums to the Court's registry. Once the funds are deposited in the Court's registry,

American General seeks recovery of its attorneys' fee pursuant to the Declaratory

Judgment Statute.

14

**CTRF denies that American General is entitled to any fees under any statute for its breach of contract and deceptive practices.**

## CANCER TREATMENT & RESEARCH FOUNDATION'S ORIGINAL COUNTER-PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** Counter-Plaintiff, Cancer Treatment & Research Foundation (hereinafter "Counter-Plaintiff"), and complains of Counter-Defendant, American General Life Insurance Company (hereinafter "American General"). In support of all its following claims and causes of action, Counter-Plaintiff would respectfully show the Court as follows:

## NATURE OF THE COUNTER-PETITION

38.     Mr. Henrique Freitas purchased a life insurance policy from Counter-Defendant insuring his life in the amount of $1,500,000.00. Henrique Freitas later named Counter-Plaintiff, Cancer Treatment & Research Foundation, as the beneficiary for the Policy.

39.     Among other things, the Policy issued by the Counter-Defendant provided life insurance in the face amount of $1,500,000.00. Under the contract and policy thereof, Henrique Freitas had paid all related premiums in a timely fashion in exchange for Counter-Defendant's agreement to pay the sum of $1,500,000.00 in the event of the death of Mr. Henrique Freitas. Moreover, the Policy at issue was in full force and effect.

40.     On or about January 4, 2010, Henrique Freitas was visiting the NewBrunswick, Middlesex County, New Jersey area in the United States of America

15

when he disappeared.  The wife of Mr. Henrique Freitas, Mrs. Maya Silva, over the course of the next few weeks, became concerned when her husband failed to contact her. After several weeks, Mrs. Maya Silva learned she could contact the United States Embassy in Guatemala for assistance in locating her husband, then presumed missing.

41.     On or about February 22, 2010 the United States Embassy in Guatemala contacted the Middlesex County, New Jersey's Office of the Medical Examiner in search of the then missing Mr. Henrique Freitas.  The Office of the Medical Examiner contacted Ms. Donna Fontana, the New Jersey State Police forensic anthropologist, who directed the Embassy to check an online missing and unidentified persons database known as "NamUs."  Maya Silva, with the help of the United States Embassy in Guatemala, with information from Donna Fontana and the Medical Examiner's Office, looked through the NamUs database and positively identified her husband's body through photographs and information which could have only been attributed to the deceased, including her knowledge of Mr. Henrique Freitas' deformed foot.  This positive identification was compelling enough to remove the case from the NamUs database as closed.  NameUs is formally known as the National Missing and Unidentified Persons System.  The site is run by the U.S. Justice Department.  NamUs allows police and the public to view information about missing people and unidentified bodies across the country.

42.     Upon verified identification, the Middlesex County, New Jersey's Office of the Medical Examiner issued an Amended Certificate of Death on March 24, 2010 identifying Mr. Henrique Freitas as the deceased person in question.

43.     After her husband's death was confirmed, Mrs. Maya Silva forwarded to Counter-Plaintiff the Policy in which Counter-Plaintiff was named a beneficiary.

16

44.     Counter-Plaintiff then contacted American General to obtain their procedures in which to file a claim on the policy.

45.     On March 5, 2010, Counter-Defendant forwarded correspondence to Counter-Plaintiff which included forms and instructions in which to make a claim. Said correspondence is attached hereto as Exhibit "A" and incorporated herein by reference.

46.     On or about April 6, 2010, the principle director for Counter-Plaintiff, Mr. Roy Almeida, completed claims form and forwarded the requested information to Counter-Defendant, requesting that benefits be paid.

47.     On or about April 20, 2010, American General forwarded correspondence to Counter-Plaintiff requesting documentation that its director could sign on Counter-Plaintiff's behalf. Mr. Roy Almeida replied to the request as sole director of Cancer Treatment & Research Foundation indicating he had full authority to execute any and all documents necessary for the completion of the claim.

48.     On or about May 10, 2010, American General forwarded correspondence to Counter-Plaintiff acknowledging receipt of the original death certificate, the amended death certificate, the Policy and the Claimant's Statement. At this time American General requested a formal document certifying Mr. Almeida's capacity to sign the documents on behalf of the foundation.

49.     On or about May 13, 2010, Counter-Plaintiff contacted American General via telephone to inquire as to the form of the certification and was asked inappropriate questions in bad faith by the adjusters for American General. Such questions included, among other things, the validity of the foundation and as to whether the foundation

actually existed. Furthermore, Counter-Defendant made accusations of fraud on the part of Counter-Plaintiff.

50.     On or about June 28, 2010, Counter-Plaintiff, at the request of Counter-Defendant, supplied the additional requested information, including but not limited to Counter-Plaintiff's article of incorporation, the corporate resolution designating Roy Almeida as the person authorized to sign on behalf of Counter-Plaintiff and other proof of Counter-Plaintiff's existence. Said information was supplied with Counter-Plaintiff's demand letter to Counter-Defendant citing numerous violations of the Texas Deceptive Trade Practices Act ("DTPA") and the Texas Insurance Code. The Counter-Plaintiff's demand allowed a response time of 60 days in which to pay the claim in compliance with the DTPA and the Texas Insurance Code.

51.     On August 27, 2010, following the expiration of 60 days, Counter-Defendant responded to Counter-Plaintiff's demand via correspondence from its counsel which contained outrageous and unsubstantiated allegations and a denial of Counter-Plaintiff's claim.

## CONDITIONS PRECEDENT

52.     All conditions precedent to recovery by Counter-Plaintiff has been met or have occurred.

## AGENCY

53.     All acts by Counter-Defendant were undertaken and completed by their officers, agents, servants, employees, and/or representatives. Such were either done with the full authorization or ratification of Counter-Defendant and/or were completed in the normal and routine course and scope of employment of Counter-Defendant.

## DECLARATORY RELIEF

54.     Counter-Plaintiff reasserts each and every allegation contained in the paragraphs hereinabove with the same force and effect as if set forth herein.

55.     Mr. Henrique Freitas entered into an insurance contract with Counter-Defendant in which Mr. Freitas agreed to pay Counter-Defendant insurance premiums in exchange for Counter-Defendant's agreement to pay Counter-Plaintiff the sum of $1,500,000.00 in the event of the death of Mr. Henrique Freitas as provided for in the Policy.

56.     Counter-Plaintiff has contacted Counter-Defendant and requested that Counter-Defendant pay the benefits owing to it under the policy however Counter-Defendant has refused to pay any benefits to Counter-Plaintiff and has instead, with no legal cause, insisted that the contract is unenforceable.

57.     Counter-Plaintiff desires a declaration of its rights and to the proceeds payable under the policy insuring Mr. Henrique Freitas.  A judicial determination is necessary and appropriate at this time under the circumstances in order that Counter-Plaintiff may ascertain its rights in and to the life insurance proceeds.

## BREACH OF CONTRACT

58.     Counter-Plaintiff reasserts each and every allegation contained in the paragraphs hereinabove with the same force and effect as if set forth herein.

59.     According to the Policy that Mr. Henrique Freitas purchased, all premiums to Counter-Defendant as required under the contract were paid.

60.     Counter-Plaintiff provided Counter-Defendant with due proof of the death of Mr. Henrique Freitas.  However, Counter-Defendant has refused to pay the insurance policy benefits.

61.     Counter-Defendant has breached the contract by refusing to pay any life insurance benefits to Counter-Plaintiff, the properly named beneficiary.

62.     As a result of Counter-Defendant's breach of the insurance contract, Counter-Plaintiff has been damaged in the sum of $1,500,000.00 plus accrued interest, court costs, attorney's fees and applicable penalties under the DTPA and the Texas Insurance Code.

## VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES ACT AND TIE-IN-STATUTES

63.     Counter-Plaintiff reasserts each and every allegation contained in the paragraphs hereinabove with the same force and effect as if set forth herein.

64.     Counter-Defendant's actions constitute violations of the DTPA, including but not limited to, Sections 17.46(b)(12), (14), (20), (24), and Section 17.50(a)(4) of the Tex. Bus. & Comm. Code. Counter-Defendant collectively engaged in false, misleading, or deceptive acts or practices that included, but were not limited to:

> a.     Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;
>
> b.     Misrepresenting the authority of a salesman, representative, or agent to negotiate the final terms of a consumer transaction;
>
> c.     Failing to disclose information concerning goods or services which were known at the time of the transaction, and the failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had such information been disclosed;

      d.      Using or employing an act or practice in violation of the Texas Insurance Code;

      e.      Unreasonably delaying the investigation, adjustment and resolution of Counter-Plaintiff's claim;

      f.      Failure to properly investigate Counter-Plaintiff's claims; and

      g.      Denying Counter-Plaintiff's claim by making outrageous allegations while failing to submit any proof whatsoever of Counter-Defendant's claims.

65.     As described in this Petition, Counter-Defendant represented to Henrique Freitas that the insurance policy and Counter-Defendant's adjusting and investigative services had characteristics or benefits that it actually did not have, which gives Counter-Plaintiff the right to recover under Section 17.46 (b)(5) of the DTPA;

66.     As described in this Petition, Counter-Defendant represented to Henrique Freitas that the insurance policy and Counter-Defendant's adjusting and investigative services were of a particular standard, quality, or grade when they were of another, which stands in violation of Section 17.46 (b)(7) of the DTPA;

67.     By representing that Counter-Defendant would pay the entire amount of benefits as contracted for in the Policy and then not doing so, Counter-Defendant has violated Sections 17.46 (b)(5), (7) and (12) of the DTPA;

68.     Counter-Defendant has breached an express warranty that upon the death of Henrique Freitas it would pay the sum of $1,500,000.00. This breach entitles Counter-Plaintiff to recover under Sections 17.46 (b) (12) and (20) and 17.50 (a) (2) of the DTPA;

69.     Counter-Defendant's actions, as described herein, are unconscionable in that it took advantage of Counter-Plaintiff's lack of knowledge, ability, and experience to

a grossly unfair degree. Counter-Defendant's unconscionable conduct gives Counter-Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA; and

70. Counter-Defendant's conduct, acts, omissions, and failures, as described in this Petition, are unfair practices in the business of insurance in violation of Section 17.50 (a)(4) of the DTPA.

71. Mr. Henrique Freitas was a consumer and relied upon these false, misleading, or deceptive acts or practices by Counter-Defendant to Counter-Plaintiff's detriment. As a direct and proximate result of Counter-Defendant's collective acts and conduct, Counter-Plaintiff has been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which Counter-Plaintiff now sues. All of the above-described acts, omissions, and failures of Counter-Defendant are a producing cause of Counter-Plaintiff's damages that are described in this Petition.

72. Because Counter-Defendant's actions and conduct were committed knowingly and intentionally, Counter-Plaintiff is entitled to recover, in addition to all damages described herein, mental anguish damages and additional penalty damages, in an amount not to exceed three times such actual damages, for Counter-Defendant having knowingly committed its conduct. Additionally, Counter-Plaintiff is ultimately entitled to recover damages in an amount not to exceed three times the amount of mental anguish and actual damages due to Counter-Defendant having intentionally committed such conduct.

73. As a result of Counter-Defendant's unconscionable, misleading, and deceptive actions and conduct, Counter-Plaintiff has been forced to retain the legal services of the undersigned attorneys to protect and pursue these claims on their behalf.

Accordingly, Counter-Plaintiff also seeks to recover its costs and reasonable and necessary attorneys' fees as permitted under Section 17.50(d) of the Texas Business & Commerce Code, as well as any other such damages to which Counter-Plaintiff may show itself to be justly entitled at law and in equity.

## VIOLATIONS OF TEXAS INSURANCE CODE

74.     Counter-Plaintiff reasserts each and every allegation contained in the paragraphs hereinabove with the same force and effect as if set forth herein.

75.     Counter-Defendant's actions constitute violations of the Texas Insurance Code, including but not limited to, Article 21.21 Sections 4(10)(a) (ii), (iv), and (viii) (codified as Section 541.060), Article 21.21 Section 11(e) (codified as Section 541,061), and Article 21.55 Section 3(f) (codified as Section 542.058). Specifically, Counter-Defendant engaged in certain unfair or deceptive acts or practices that include, but are not limited to the following:

a.     Failing to attempt, in good faith, to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear;

b.     Failing to provide promptly to a beneficiary a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim;

c.     Refusing to pay a claim without conducting a reasonable investigation with respect to the claim;

d.     Compelling Counter-Plaintiff to file suit to recover amounts due under the policy by refusing to pay all benefits due;

e.     Misrepresenting an insurance policy by failing to disclose any matter required by law to be disclosed, including a failure to make such disclosure in accordance with another provision of this code; and

23

        f.      Failing to pay a valid claim after receiving all reasonably requested and required items from the claimant.

76.     Counter-Plaintiff is the beneficiary of a claim which was apparently valid as a result of the unauthorized acts of Counter-Defendant, and Counter-Plaintiff relied upon these unfair or deceptive acts or practices by Counter-Defendant to their detriment. Accordingly, Counter-Defendant became the insurers of Counter-Plaintiff.

77.     As a direct and proximate result of Counter-Defendant's acts and conduct, Counter-Plaintiff has been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which it now sues.

78.     Since a violation of the Texas Insurance Code is a direct violation of the DTPA, and because Counter-Defendant's actions and conduct were committed knowingly and intentionally, Counter-Plaintiff is entitled to recover, in addition to all damages described herein, mental anguish damages and additional damages in an amount not to exceed three times the amount of actual damages, for Counter-Defendant having knowingly committed such conduct. Additionally, Counter-Plaintiff is entitled to recover damages in an amount not to exceed three times the amount of mental and actual damages for Counter-Defendant having intentionally committed such conduct.

79.     As a result of Counter-Defendant's unfair and deceptive actions and conduct, Counter-Plaintiff has been forced to retain the legal services of the undersigned attorneys to protect and pursue these claims on its behalf. Accordingly, Counter-Plaintiff also seeks to recover its costs and reasonable and necessary attorneys fees as permitted under Section 17.50(d) of the Texas Business and Commerce Code, Article 21.21 Section 16(b)(1) (codified as Section 541.152) of the Texas Insurance Code and any other such

damages to which Counter-Plaintiff may show itself to be justly entitled by law and in equity.

## BREACH OF THE COMMON-LAW DUTY OF GOOD FAITH AND FAIR DEALING

80.     Counter-Plaintiff reasserts each and every allegation contained in the paragraphs hereinabove with the same force and effect as if set forth herein.

81.     By its acts, omissions, failures and conduct, Counter-Defendant has breached its common law duty of good faith and fair dealing by denying Counter-Plaintiff's claim or inadequately adjusting and making an offer on Counter-Plaintiff's claim without any reasonable basis, and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for these denials.

82.     Counter-Defendant has also breached this duty by unreasonably delaying payment of Counter-Plaintiff's entire claim and by failing to settle Counter-Plaintiff's claims, as Counter-Defendant knew or should have known that it was reasonably clear that Counter-Plaintiff's claim was covered.  These acts, omissions, failures, and conduct by Counter-Defendant is a proximate cause of Counter-Plaintiff's damages.

## UNFAIR INSURANCE PRACTICES

83.     Counter-Plaintiff reasserts each and every allegation contained in the paragraphs hereinabove with the same force and effect as if set forth herein

84.     Counter-Plaintiff has satisfied all conditions precedent to bringing these causes of action.  By their acts, omissions, failures, and conduct, Counter-Defendant has engaged in unfair and deceptive acts or practices in the business of insurance in violation of Chapter 541 of the Texas Insurance Code.

85.     Such violations include, without limitation, all the conduct described in this Original Petition plus Counter-Defendant's failure to properly investigate Counter-Plaintiff's claim. They also include Counter-Defendant's unreasonable delays in the investigation, adjustment, and resolution of Counter-Plaintiff's claim and their failure to pay benefits upon the death of Henrique Freitas, as to which Counter-Defendant's liability had become reasonably clear.

86.     Specifically, Counter-Defendant is also guilty of the following unfair insurance practices:

a.      Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

b.      Engaging in unfair claims settlement practices;

c.      Misrepresenting to Counter-Plaintiff pertinent facts or policy provisions relating to the coverage at issue;

d.      Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Counter-Plaintiff's claim as to which Counter-Defendant's liability had become reasonably clear;

e.      Failing to affirm or deny Counter-Plaintiff's claim within a reasonable time and failing within a reasonable time to submit a reservation of rights letter to Counter-Plaintiff;

f.      Refusing to pay Counter-Plaintiff's claim without conducting a reasonable investigation with respect to the claim; and

g.      Failing to provide promptly to a beneficiary a reasonable explanation of the basis in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

87.     Counter-Defendant has also breached the Texas Insurance Code when it breached its duty of good faith and fair dealing. Counter-Defendant's conduct as

26

described herein has resulted in Counter-Plaintiff's damages that are described in this Petition.

## MISREPRESENTATION

88.     Counter-Plaintiff reasserts each and every allegation contained in the paragraphs hereinabove with the same force and effect as if set forth herein.

89.     Counter-Defendant is liable to Counter-Plaintiff under the theories of intentional misrepresentation, or in the alternative, negligent misrepresentation. Essentially, Counter-Defendant did not inform Counter-Plaintiff of certain exclusions in the policy. Misrepresentations were made with the intention that they should be relied upon and acted upon by Counter-Plaintiff. Counter-Plaintiff relied on the misrepresentations to their detriment. As a result, Counter-Plaintiff has suffered damages, including but not limited to mental anguish and attorney fees. Counter-Defendant is liable for these actual consequential and penalty-based damages.

## COMMON-LAW FRAUD BY NEGLIGENT MISREPRESENTATION

90.     Counter-Plaintiff reasserts each and every allegation contained in the paragraphs hereinabove with the same force and effect as if set forth herein.

91.     Counter-Plaintiff would show that Counter-Defendant perpetrated fraud by misrepresentation (either intentionally or negligently) by falsely representing a fact of materiality to Counter-Plaintiff, whether relied upon such representations that ultimately resulted in its injuries and damages. Alternatively, Counter-Defendant, individually or collectively, fraudulently concealed material facts from Counter-Plaintiff, the result of which caused damages to Counter-Plaintiff which were foreseeable.

92.     Specifically, and as a proximate cause and result of this fraudulent concealment, fraud and negligent misrepresentation, all of which was perpetrated without the knowledge or consent of Counter-Plaintiff, it has sustained damages far in excess of the minimum jurisdictional limits of this Court.

93.     By reason of Counter-Plaintiff's reliance on Counter-Defendant's individual and/or collective fraudulent representations, negligent misrepresentations and/or fraudulent concealment of material facts as described in this Petition, Counter-Plaintiff has suffered actual damages for which it now sues.

94.     Counter-Plaintiff further alleges that because Counter-Defendant knew that the misrepresentations made to Counter-Plaintiff was false at the time they were made, such misrepresentations are fraudulent, negligent or grossly negligent on the part of Counter-Defendant, individually and/or collectively, and constitute conduct for which the law allows the imposition of exemplary damages.

95.     In this regard, Counter-Plaintiff will show that it has incurred significant litigation expenses, including attorneys fees, in the investigation and prosecution of this action.

96.     Accordingly, Counter-Plaintiff requests that penalty damages be awarded against Counter-Defendant, in a sum in excess of the minimum jurisdictional limits of this Court.

## **PERSERVING EVIDENCE**

97.     Counter-Plaintiff reasserts each and every allegation contained in the paragraphs hereinabove with the same force and effect as if set forth herein.

28

98.     Counter-Plaintiff hereby requests and demands that Counter-Defendant preserve and maintains all evidence pertaining to any claim or defense related to the above referenced Policy and claim for benefits.

## DAMAGES

99.     Counter-Defendant's acts have been the producing and/or proximate cause of damage to Counter-Plaintiff that far exceeds the minimum jurisdictional limits of this court.

## ADDITIONAL DAMAGES & PENALTIES

100.     Counter-Defendant's conduct was committed knowingly and intentionally. Accordingly, Counter-Defendant is liable for additional damages under the DTPA, section 17.50(b) (1), as well as all operative provisions of the Texas Insurance Code. Counter-Plaintiff is thus clearly entitled to the 18% damages allowed by the Texas Insurance Code.

101.     Because Counter-Defendant's actions and conduct were committed knowingly and intentionally, Counter-Plaintiff is entitled to recover exemplary damages pursuant to applicable Texas law.

## ATTORNEYS' FEES

102.     In addition, Counter-Plaintiff is entitled to all reasonable and necessary attorney fees pursuant to the Texas Insurance Code, DTPA, and sections 38.001-.005 of the Texas Civil Practice and Remedies Code.

## PRAYER

Counter-Plaintiff prays that Judgment be entered against Counter-Defendant, that Counter-Plaintiff be awarded all of its actual damages, consequential damages, pre-

judgment interest, additional statutory damages, post-judgment interest, penalty damages, reasonable and necessary attorneys fees, court costs and for all such other relief, general or specific, in law or in equity, to which Counter-Plaintiff may show itself justly entitled, whether pled or unpled within this Original Petition.

WHEREFORE, PREMISES CONSIDERED, Counter-Plaintiff prays it be awarded all such relief to which it is entitled as a result of the acts of Counter-Defendant, and for all such other relief to which Counter-Plaintiff may be justly entitled.

Respectfully submitted,

THE VOSS LAW FIRM, P.C.

__/s/Scott G. Hunziker_____
BILL L. VOSS
Texas Bar No. 24047043
SCOTT G. HUNZIKER
State Bar No. 24032446
The Austin Building
25511 Budde Road, Suite 202
The Woodlands, Texas 77380
Telephone: (713) 861-0015
Facsimile: (713) 861-0021

Kenneth C. Apicella
APICELLA & MALATESTA LLC
134 North LaSalle, Suite 320
Chicago, IL 60602
(312) 445-0514 (telephone)
(312) 261-9968 (facsimile)
kca@theamfirm.com

**ATTORNEYS FOR
DEFENDANT/COUNTER-PLAINTIFF**